| | | |
|---|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, <br> A Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> KANSAS CITY PET PROJECT <br> a Missouri Non-Profit Corporation, <br> Serve: Khatija Meghji <br> 7077 Elmwood Avenue <br> Kansas City, MO 64132-1614, <br><br> ANGELA CULBERTSON, <br><br> LINDA NADINE CULBERTSON, <br><br> WILLIAM L. HUBBARD, <br> As personal representative for the estate of <br> CHRIS CULBERTSON, <br><br> HOLLY LANE, <br><br> QUENTIN GRIDER, <br><br> and <br><br> R.R., a minor. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. |

**THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY'S
COMPLAINT FOR INTERPLEADER AND DECLARATORY JUDGMENT**

COMES NOW Plaintiff The Cincinnati Specialty Underwriters Insurance Company ("Cincinnati"), by and through undersigned counsel, for its Complaint for Interpleader and Declaratory Judgment, states as follows:

## Parties

1. The Cincinnati Specialty Underwriters Insurance Company is a registered Delaware corporation with its principal place of business in Fairfield, Ohio.

2. Kansas City Pet Project is a Missouri non-profit corporation organized under the laws of Missouri and is incorporated in Missouri with its principal place of operation/business in Missouri. Kansas City Pet Project may be served with process via its registered agent, Khatija Meghji, at 7077 Elmwood Avenue, Kansas City, MO 64132-1614.

3. Angela Culbertson, individually, is a citizen of Missouri as well as domiciled in Missouri.

4. Linda Nadine Culbertson, individually, is a citizen of Missouri as well as domiciled in Missouri.

5. Pursuant to 28 U.S.C. § 1332(c)(2), the legal representative of the estate of a decedent is deemed a citizen of the same state as the decedent. William L. Hubbard, as personal representative for the Estate of Chris Culbertson; prior to his death, Chris Culbertson was a citizen of Missouri and domiciled in Missouri.

6. Angela Culbertson, Linda Nadine Culbertson, and William L. Hubbard, as personal representative for the estate of Chris Culbertson, when referenced collectively shall be referenced as the "Culbertson Defendants" in this petition.

7. Holly Lane, individually is a citizen and resident of the State of Missouri, as well as domiciled in Missouri.

8. Quentin Grider, individually, is a citizen of Missouri as well as domiciled in Missouri.

9. R.R., a minor, individually, is a citizen of Missouri as well as domiciled in Missouri.

### Jurisdiction and Venue

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest, and attorney's fees and there exists complete diversity of citizenship.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to this lawsuit occurred in this Federal District.

### The Insurance Policies

12. Cincinnati issued a policy of commercial general liability insurance to named insured Kansas City Pet Project ("KC Pet Project") bearing the policy number CSU0213168 with effective dates of July 1, 2024 to July 1, 2025 (the "Policy"), a redacted copy of which is attached hereto as Exhibit 1.

13. The Policy contains an each occurrence limit of $1,000,000.00 for each occurrence. The Policy also contains a general aggregate limit of $2,000,000.00. (*See,* Ex. 1, at p. 24).

14. The Insuring Agreement found in the Commercial General Liability Coverage Form of the Policy, Form CG 00 01 04 13, states in pertinent part as follows:

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

> However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
>> (1) The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and
>>
>> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>>
>> (2) The "bodily injury" or "property damage" occurs during the policy period; \*\*\*\*

(*See,* Ex. 1, at p. 30).

15. The Policy contains an Endorsement for titled Exclusion – Animal Bite with Limited Optional Coverage CSIA405(08/09)-A which reads in pertinent part as follows:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>
> **A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability**:
>
>> **a.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" caused by or arising out of any animal bite sustained by any person or animal.
>>
>> However, if the **Schedule** below is completed indicating limited optional coverage has been selected, we will pay those sums that the insured becomes legally obligated to pay as damages because of

4

Case 4:26-cv-00170-SRB   Document 1   Filed 02/26/26   Page 4 of 20

"bodily injury" or "property damage" arising out of an actual or threatened animal bite sustained by any person or animal. The amount we will pay for damages for any claim arising out of an animal bite is limited as described in Paragraph **B. Limits of Insurance** identified in the Schedule below.

No other coverage is provided under the **Commercial General Liability Coverage Form** or the **Liquor Liability Coverage Enhancement** for "bodily injury" or "property damage" arising out of an animal bite than that which is provided by this **LIMITED OPTIONAL COVERAGE**

**Schedule**

Limits of Insurance:

Each Occurrence: $   150,000

Aggregate Limit: $   300,000

Deductible
Each Occurrence: $   2,500

**B.    Limits of Insurance and Deductibles**

1. The Limits of Insurance shown in the Declarations are replaced by the limits designated in the Schedule above with respect to coverage provided by this endorsement. These limits are inclusive of and not in addition to the limits being replaced. The limits of Insurance shown in the Schedule fix the most we will pay in any one "occurrence" regardless of the number of.

    a.   Insureds;

    b.   Claims made or "suits" brought; or

    c.   Persons or organizations making claims or bringing "suits". *****

(*See,* Ex. 1, at p. 6).

16. Cincinnati issued a policy of commercial excess liability insurance to named insured KC Pet Project bearing the policy number CSU0213169 with effective dates of July 1, 2024 to July, 1 2025 (the "Excess Policy"), a redacted copy of which is attached hereto as Exhibit 2.

5

17. The Excess Policy contains an each occurrence limit of $2,000,000.00 for each occurrence. Excess Policy also contains a general aggregate limit of $2,000,000.00. (*See,* Ex. 2, at p. 19).

18. The sublimit described in the Exclusion – Animal Bite with Limited Optional Coverage Endorsement of the Policy does not appear in the Schedule of Controlling Underlying Insurance Form CSCX 400 06 09 found in the Excess Policy. (*See,* Ex. 2, at p. 20).

19. The Insuring Agreement of the Excess Policy, Form CSCX 100 02 13, states in pertinent part as follows:

> **1.** **Insuring Agreement**
>
> a. We will pay on behalf of the insured, except as stated in this Coverage Part, those sums in excess of the "retained limit" any insured becomes legally obligated to pay as damages to which insurance provided under this Coverage Part applies.
>
> b. The amount we will pay for "loss" is limited as described in Section **II – **Limits of Insurance
>
> c. This insurance applies to damages that are subject to an applicable "retained limit". If any other limit, such as, a sublimit, is specified in the "controlling underlying insurance", this insurance does not apply to damages arising out of that exposure unless that limit is specified under the schedule of "controlling underlying insurance."
>
> d. If the "controlling underlying insurance" requires for a particular claim, that the injury or damages occur during its policy period in order for that coverage to apply, then this insurance will only apply to that injury or damages if it occurs during the policy period of this Coverage Part. If the "controlling underlying insurance" requires that the "event" causing the particular damage takes place during its policy period in order for that coverage to apply, then this insurance will apply to the claim only if the "event" causing that damage takes place during the policy period of this Coverage Part.

(*See,* Ex. 2, at p. 23).

20. The Excess Policy defines "controlling underlying insurance", "controlling underlying insurer", "event", "loss", and "retained limit" as follows.

    **1.** "Controlling underlying insurance" means any policy of insurance or self-insurance listed as such in our Schedule of Controlling Underlying Insurance.

    **2.** "Controlling underlying insurer" means any insurer who provides any policy of insurance listed as such in our Schedule of Controlling Underlying Insurance.

    **3.** "Event" means an occurrence, offense, accident, act, error or omission, or other event to which the applicable "controlling underlying insurance" applies.

    **4.** "Loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

        a. Settlements, judgments, binding arbitration; or

        b. Other binding alternate dispute resolution proceeding entered into with our consent.

    "Loss" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

    **5.** "Retained limit" means the available limits of "controlling underlying insurance" applicable to the claim.

(*See,* Ex. 2, at p. 28).

21. Cincinnati issued a policy of veterinarian professional liability insurance to named insured KC Pet Project bearing the policy number CSU0213173 with effective dates of July 1, 2024 to July, 1 2025 (the "Professional Liability Policy"), a redacted copy of which is attached hereto as Exhibit 3.

22. The Professional Liability Policy contains an each occurrence limit of $1,000,000.00 for each occurrence. Professional Liability Policy also contains an aggregate limit of $3,000,000.00.

(*See,* Ex. 3, at p. 21).

    23.    The Insuring Agreement of the Professional Liability Policy, Form CSPA 1001 01 13, states in pertinent part as follows:

> **1. Insuring Agreement**
>
> **a.**    We will pay those sums that the insured becomes legally obligated to pay as "damages" due to injury caused by a "professional incident" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. We may, at our discretion, investigate any "professional incident" and settle any claim or "suit" that may result. But:
>
>     (1)    The amount we will pay for "damages" is limited as described in **SECTION III - LIMITS OF INSURANCE**; and
>
>     (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.
>
> **b.**    This insurance applies to injury only if:
>
>     (1)    The injury is caused by a "professional incident" that takes place in the "coverage territory"; *****

(*See,* Ex. 3, at p. 24)

    24.    The Professional Liability Policy, Form CSPA 1001 01 13, defines "professional incident" and "professional services" as follows:

> **9.**    "Professional incident" means any act, error, or omission arising out of the providing of or failing to provide "professional services" by an insured or any person acting under the personal direction, control or supervision of the insured.
>
> Any such act, error or omission together with all related acts, errors or omissions in the furnishing of such "professional services" to any one person shall be considered one "professional incident".

10. "Professional services" means:

    a.    The practice of veterinary medicine in the diagnoses and treatment of disease or injury to animals; or

    b.    Providing healthcare for pets, livestock, and zoo, sporting, and laboratory animals;

as prescribed by the applicable statutes and licensing laws of the jurisdictions which the insured practices.

(*See,* Ex. 3, at p. 30)

25. The Policy, Excess Policy, and Professional Liability Policy in this complaint are collectively referenced hereto as the "Policies". The Policy and Excess Policy, subject to the Policy and Excess Policy's terms and provisions, provides bodily injury and property damage coverage for bodily injury or property damage that occurs during the policy period caused by an occurrence. The Professional Liability Policy, subject to the Professional Liability Policy's terms and provisions, provides sums that the insured becomes legally obligated to pay as damages due to injury caused by a "professional incident" to which the Professional Liability Policy applies on a claims made basis.

## The Claimed Dog Bites

26. This Complaint concerns several claims involving dog bite incidents which are described herein (collectively referenced herein as "Incident").

**I. The Culbertson and Lane Incidents**

27. The incident relating to Holly Lane and Christopher Culbertson occurred on November 2, 2024.

28. Ms. Lane filed a lawsuit styled *Holly Lane v. Kansas City Pet Project* (Case No. 2516-CV07440) (henceforth referenced as "Lane Lawsuit") in the Circuit Court of Jackson County, Missouri on March 5, 2025. A true and correct copy of the Petition is attached as Exhibit 4 hereto.

29. The petition ("Petition") in the Lane Lawsuit brings forth a count of negligence against the KC Pet Project.

30. The Lane Lawsuit alleges on or about November 2, 2024, Chris Culbertson was riding his bicycle in the 3200 block of East 80th Street in Kansas City, Missouri. Petition ¶ 7.

31. The Lane Lawsuit alleges that at all relevant times, John Thibeaux and/or John R. Thibeaux owned or harbored several pitbull dogs at their residence of 3216 E. 80th Street, Kansas City, Missouri (referenced in the Lane Lawsuit as "the Property") wherein said property had a fence with multiple holes throughout the fence line. Petition ¶¶ 5-6.

32. The Lane Lawsuit alleges that at some point, two of the pitbull dogs escaped their primary enclosure and began following Culbertson while nipping and tugging at Culbertson's bicycle, his belongings, and his legs. In attempting to evade the dogs, Culbertson fell from his bike. Petition ¶¶ 8 and 11.

33. The Lane Lawsuit alleges that after Culbertson fell, one of the pitbulls began biting and tugging at his backpack. Shortly thereafter, several more pitbulls escaped the Property and also began attacking Culbertson and dragged him from his bike. Petition ¶¶ 12-14.

34. The Lane Lawsuit alleges that during this attack, Culbertson tried to escape and screamed for help. Petition ¶¶ 15-16.

35. The Lane Lawsuit alleges that Ms. Lane, who lived next door to the Property, was in her home at the time of the attack, and upon hearing Culbertson's cries for help, ran outside to help Culbertson and tried in vain to get the dogs to stop attacking Culbertson. Petition ¶ 18.

36. The Lane Lawsuit alleges that after the pitbull dogs turned their aggressiveness towards Ms. Lane, Ms. Lane went back to her house to retrieve the golf club she kept near her front door for the specific reason of protecting herself against the same pitbull dogs. Petition ¶ 19.

37. The Lane Lawsuit alleges that after retrieving the golf club, Ms. Lane went back outside and began swinging the club at the dogs only to have some of the dogs turn and attack on her and bite her legs, causing her severe injuries. Petition ¶ 20.

38. The Lane Lawsuit alleges that Culbertson sustained substantial and severe injuries from over 300 dog bites and ultimately developed an infection as a result of these injuries and died on November 6, 2024. Petition ¶ 22.

39. The Lane Lawsuit alleges that KC Pet Project entered into a contract in 2020 (hereinafter, "the Contract") with the City of Kansas City, Missouri ("KCMO") to assume all animal control responsibilities for KCMO through Kansas City Pet Project's Animal Services Division. Petition ¶ 26.

40. The Lane Lawsuit alleges that KC Pet Project "shall at all times, faithfully and competently perform all tasks described therein in *strict compliance with and adhere to Chapter 14,* Animals, of CITY's Code of Ordinances and all applicable State, County, and Federal regulations." Petition ¶ 27.

41. The Lane Lawsuit alleges that in the time since KC Pet Project took over animal control services from KCMO, the amount of citations and enforcement with respect to dangerous dogs dropped. Petition ¶¶ 32-34.

42. The Lane Lawsuit alleges that KCMO ordinances require the spay or neuter of pitbull dogs (with certain exceptions), a policy KCPP has long and publicly opposed. In 2023, KC

11

Pet Project wrote just 48 tickets for failure to spay and neuter, representing a 74% decrease from tickets issued in 2020 for such failures, and an 88% decrease compared to 2019. Petition ¶¶ 39.

43. The Lane Lawsuit alleges that prior to November 2, 2024, KC Pet Project received numerous complaints from residents living in and around the 3100 and 3200 blocks of East 80th Street that various pitbulls in the neighborhood had escaped their enclosures; attacked or killed other domesticated animals and were roaming in the surrounding neighborhood. Petition ¶ 59.

44. The Lane Lawsuit alleges that KC Pet Project owed the public and Ms. Lane reasonable care in carrying out the duties of animal control for KCMO and that prior to November 2, 2024, KC Pet Project knew or should have known that there were several aggressive and/or dangerous and/or potentially dangerous pitbull dogs running loose in, and roaming and terrorizing the neighborhood in and around the 3100 and 3200 blocks of East 80th Street. Petition ¶ 66.

45. The Lane Lawsuit alleges that Kansas City Pet Project failed to use ordinary care and breached its duty to Ms. Lane and the public in the following respects:

- a) It failed to adhere to industry standards governing and applying to the performance of animal control services;
- b) It failed to investigate complaints regarding the subject pitbull dogs and other animals, generally;
- c) It failed to enforce Chapter 14 of the City's Code of Ordinances, as amended, as to the subject pitbull dogs and other animals, generally;
- d) It failed to keep investigative reports;
- e) It failed to obtain search warrants;
- f) It failed to pick up and impound the subject pitbull dogs, and other animals at large;
- g) It failed to pick up and impound animals reported to have bitten a person or a domestic animal;
- h) It failed to issue citations;

i) It failed to respond to complaints regarding the subject pitbull dogs and other animals;

j) It failed to comply with KCMO's dangerous dog declarations;

k) It failed to participate in on-going training;

l) It failed to enforce KCMO's prohibitions against the keeping of dangerous animals within the City;

m) It failed to enforce the limits of animals kept lawfully;

n) It allowed a public nuisance to exist;

o) It failed to prevent the subject pitbull dogs from biting Plaintiff;

p) It allowed known dangerous and/or potentially dangerous pitbull dogs to remain with an unfit owner;

q) It allowed an unfit owner to own, keep, and/or harbor aggressive and/or dangerous and/or potentially dangerous pitbull dogs; and

r) It allowed an unfit owner to own, keep, and/or harbor aggressive and/or dangerous and/or potentially dangerous pitbull dogs despite lack of a proper enclosure to confine the dog(s). Petition ¶ 67.

46. The Lane Lawsuit alleges that as a result of KC Pet Project's actions and/or failures described in the petition, Ms. Lane sustained physical, psychological, and emotional injuries; has incurred, and may continue to incur medical expenses; and has experienced and will continue to experience, pain and suffering. Petition ¶ 68.

47. On or about December 9, 2025, Counsel representing the Culbertson Defendants sent a demand to Cincinnati as insurer of KC Pet Project regarding the same dog attack referenced in the Lane Lawsuit that Chris Culbertson experienced.

**II.     The R.R. (minor) Incident**

48.     On or about August 5, 2025, the Peterson Law Firm, acting as counsel for the parents of R.R., a minor, sent Cincinnati a demand ("R.R. Demand") relating to an incident where R.R., a 3-year old, was allegedly injured by a dog bite at her home on March 3, 2025.

49.     The R.R. Demand alleges that R.R. was attacked by an akita dog that was adopted from the KC Pet Project. Following the attack, the dog was returned to KC Pet Project.

50.     The R.R. Demand alleges that as a result of this attack, they suffered from facial lacerations necessitating surgical repair.

**III.    The Grider Incident**

51.     In an April 1, 2025 email, Leah Mason of Edelman & Thompson LLC, acting as counsel for Quentin Grider notified KC Pet Project's counsel of the dog bite incident involving Quentin Grider.

52.     In the April 1st Email, Ms. Mason advised that on March 25, 2025, Mr. Grider was at a home located at 517 Quincy Street, Kansas City, Missouri owned by Michael Bell, who Ms. Mason understood to be the owner of the dog.

53.     The April 1st Email expressed that the dog was a rottweiler that attacked Mr. Grider, causing the need for stitches on the face.

54.     The April 1st Email requested that KC Pet Project advise on the dog's rabies vaccination status, to which counsel for KC Pet Project advised affirmatively that the rottweiler dog in question was vaccinated.

55.     Attached and enclosed to the April 1st correspondence was a demand letter ("Grider Demand") confusingly dated December 26, 2024 from Edelman & Thompson LLC, acting as counsel for Quentin Grider, addressed to KC Pet Project relating the dog bite incident involving

14

Quentin Grider. The Grider Demand alleges that on March 25, 2025, Quentin Grider suffered bodily and psychological injuries and damages arising from a rottweiler dog attack.

56. In a subsequent email, counsel for Mr. Grider requested records relating to previous reports to KC Pet Project relating to the rottweiler dog to which counsel for KC Pet Project expressed that there was no record of such dog being reported prior to the notice of the incident.

**<u>Any Indemnity Owed By Cincinnati Is Only Subject To Sublimits Contained In The Policy's Exclusion – Animal Bite With Limited Optional Coverage Endorsement And No Excess Coverage Or Professional Liability is Owed</u>**

57. The Policy's Exclusion – Animal Bite with Limited Optional Coverage CSIA405(08/09)-A Endorsement ("Animal Bite/Limited Coverage Endorsement") provides that the Policy does not apply to "bodily injury" caused by or arising out of any animal bite sustained by any person unless the schedule shown in the Animal Bite/Limited Coverage Endorsement is completed. If the Animal Bite/Limited Coverage Endorsement schedule is completed, then the Policy offers limited coverage for "bodily injury" caused by or arising out of any animal bite up to the limits shown in the completed Animal Bite/Limited Coverage Endorsement schedule. The Animal Bite/Limited Coverage Endorsement schedule contains an each occurrence limit of $150,000 and an aggregate limit of $300,000.

58. Because the claims involving Chris Culbertson, Holly Lane, Quentin Grider, and R.R. arose out of dog bites suffered by those individuals, the Animal Bite/Limited Coverage Endorsement is triggered for each claim.

59. Pursuant to the Animal Bite/Limited Coverage Endorsement, if the Animal Bite/Limited Coverage Endorsement is triggered, the Policy's limits of insurance shown in the Policy's Declarations are replaced by limits designated in the Animal Bite/Limited Coverage Endorsement which are $150,000 for each occurrence and $300,000 for the aggregate limit.

60. The Excess Policy's Insuring Agreement provides that the Excess Policy "applies to damages that are subject to an applicable "retained limit"." And "if any other limit, such as, a sublimit, is specified in the "controlling underlying insurance", this insurance does not apply to damages arising out of that exposure unless that limit is specified under the schedule of "controlling underlying insurance." *See* Ex. 2, at p. 23.

61. The sublimit described in the Policy's Animal Bite/Limited Coverage Endorsement does not appear in the Excess Policy's Schedule of Controlling Underlying Insurance Form CSCX 400 06 09. *See* Ex. 2, at 20. Therefore the Excess Policy does not apply with respect to the Incidents.

62. No claimed damages associated with any of the Incidents was caused by a "professional incident" as defined under the Professional Liability Policy. Therefore under the Professional Liability Policy, there is no coverage owed to any of the defendants with respect to the Incidents.

63. The Excess Policy's Schedule of Controlling Underlying Insurance Form CSCZ 400 06 09. *See* Ex. 2, at 20, does not contain any reference to the Professional Liability Policy. Therefore, the Excess Policy is not excess to any potential coverage offered by the Professional Liability Policy.

64. To the extent any claim for an occurrence takes place outside of the Policies' effective dates, no coverage is applicable.

16

Case 4:26-cv-00170-SRB     Document 1     Filed 02/26/26     Page 16 of 20

## COUNT I – INTERPLEADER (against Angela Culbertson, Linda Nadine Culbertson, William L. Hubbard as personal representative for the estate of Chris Culbertson, Holly Lane, Quentin Grider, and R.R., a minor)

65. Plaintiff Cincinnati re-alleges and reincorporates paragraphs 1 through 64 as if fully set forth herein.

66. Upon information and belief, the Culbertson Defendants, Holly Lane, Quentin Grider, and R.R. may be entitled to bodily injury coverage under the Policy and claims have been asserted on behalf of the Culbertson Defendants, Quentin Grider, Holly Lane, and R.R.

67. The total amount of the claims asserted for bodily injury arising from the Incidents is likely to exceed the Policy's Animal Bite/Limited Coverage Endorsement's $300,000 limit.

68. The Culbertson Defendants, Holly Lane, Quentin Grider, and R.R.'s claims are adverse and independent of each other.

69. Cincinnati is exposed to multiple liability by the Culbertson Defendants, Holly Lane, Quentin Grider, and R.R.'s claims.

70. Under Mo. Rev. Stat 507.060.1 "[p]ersons having claims against the plaintiff or plaintiff's insured may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to multiple liability, including claims against the same insurance coverage."

71. Similarly, under Rule 52.07, a plaintiff may interplead when it is in possession of a common fund sought by multiple claimants and request judicial resolution of the claimants' adverse claims to the fund.

72. Interpleader is appropriate where, as here, Cincinnati has been exposed to multiple conflicting liabilities due to the Culbertson Defendants, Holly Lane, Quentin Grider, and R.R.'s adverse claims on the applicable insurance coverage in connection with KC Pet Project's potential liability arising out of the occurrences.

73. Here, each of the Culbertson Defendants, Holly Lane, Quentin Grider, and R.R. claims and/or potentially has an interest in the commercial general liability proceeds of the Policies; these conflicting claims for payment of commercial general liability insurance under the Policies places Cincinnati and its insured in doubt as to which defendant is entitled to the benefit of the Policy's proceeds and how to apportion such proceeds among the various claimants.

74. Cincinnati is ready, willing, and able to pay the $150,000 each occurrence limit and $300,000 aggregate limit of the Policy's Animal Bite/Limited Coverage Endorsement in whatever manner the Defendants, its insured, and/or the Court sees fit and is indifferent to the manner in which the Policy's proceeds are allocated and distributed among the Defendants. Thus, Cincinnati petitions the Court in Interpleader to determine the proper distribution of the $150,000 each occurrence limit and $300,000 aggregate limit of the Policy's Animal Bite/Limited Coverage Endorsement.

75. In accordance with Mo. Rev. Stat § 507.060, Plaintiff will continue to defend KC Pet Project in the Lane Lawsuit subject to a reservation of all rights.

76. Cincinnati has no other available or adequate remedy at law.

77. Therefore, Cincinnati is entitled to interplead the sum of $300,000 for the Court's determination as to the allocation and distribution of the funds among the Defendants.

WHEREFORE, Plaintiff The Cincinnati Specialty Underwriters Insurance Company prays for an Order from the Court as follows:

A. Allowing Cincinnati to interplead the sum of $300,000.00, which consists of the Policy's Animal Bite/Limited Coverage Endorsement's $150,000.00 each occurrence and $300,000.00 aggregate limit in general commercial liability coverage, into the Court within thirty (30) days of this Court's Order granting interpleader of the above-described claims;

B. Declaring the rights of the parties concerning the Policy's Animal Bite/Limited Coverage Endorsement's $300,000.00 limit from the interplead funds;

C. Declaring that pursuant to Section 507.060, Cincinnati shall not be liable to pay any amount in excess of the interplead funds to the Defendants or to any other person or entity entitled to liability coverage under the Policies as a result of the Incidents, but shall continue to afford a defense to Cincinnati's insured against any claims against it arising out of the Incidents.

D. For any such further relief that the Court deems just and proper under the circumstances.

### COUNT II – DECLARATORY JUDGMENT (against all defendants)

78. Paragraphs 1 through 77 are hereby incorporated by reference.

79. There exists an actual controversy of a justiciable nature between the parties concerning the rights and obligations of the parties of the insurance contract and other Defendants.

80. The matter is ripe because there is a dispute regarding Cincinnati's exposure or duties in the settlement and/or adjudication of the matters relating to the Incidents.

81. Cincinnati has complied with all terms, conditions, and provisions of the Policies' insurance contracts.

82. By virtue of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations, and liabilities that exist between the parties in connection to the aforementioned Policies.

83. With respect to this count for declaratory judgment and pursuant to Fed. R. Civ. P. 38(b) Cincinnati hereby demands that this case be tried by a jury.

WHEREFORE, Plaintiff The Cincinnati Specialty Underwriters Insurance Company prays that this Court enter judgment in its favor and against Defendant declaring:

A. That for the dog bite Incidents referenced in this Petition, the Policy's Animal Bite/Limited Coverage Endorsement is triggered and precludes Policy's limits $1,000,000.00 per occurrence and $2,000,000.00 aggregate total but rather, that the applicable limits are from the Policy's Animal Bite/Limited Coverage Endorsement schedule of $150,000.00 per occurrence and $300,000.00 aggregate;

B. That under the Excess Policy, there is no coverage owed to any of the defendants with respect to the Incidents;

C. That under the Professional Liability Policy, there is no coverage owed to any of the defendants with respect to the Incidents;

D. For such other and further relief as the Court deems just, proper, and equitable.

Respectfully submitted,

LITCHFIELD CAVO LLP

By: /s/ *Anthony Hernandez*
Michael L. Brown          MO #55732
Anthony Hernandez       MO #69129
10401 Holmes Road, Suite 220
Kansas City, MO 64131
(816) 648-1400
(816) 648-1401 Fax
brown@litchfieldcavo.com
hernandeza@litchfieldcavo.com
ATTORNEYS FOR PLAINTIFF
THE CINCINNATI SPECIALTY
UNDERWRITERS INSURANCE COMPANY